[May, Adm'r, v. Green.]


# May, Adm'r, *v.* Green.

*Bill in Equity for Final Settlement and Distribution of Decedent's Estate.*

1. *Final decree; what is, and when appeal barred.*—A decree rendered in a cause made by a bill filed for the final settlement and distribution of a decedent's estate, assuming jurisdiction of the estate, removing the administration from the probate into the chancery court, ordering a reference on the administrator's accounts, and laying down rules by which they should be stated, is final, within the meaning of the statute authorizing appeals to this court; and hence, assignments of error based on such decree can not be considered on an appeal taken, more than twelve months after its rendition, from another decree rendered in the cause on the coming in of the register's report.

2. *Liability of administrator for interest.*—An administrator who, without sufficient excuse, postpones making a final settlement and distribution of the estate for an unreasonable period of time, is liable for interest on funds in his hands belonging to the estate, which he ought to have distributed, although he makes the exculpatory affidavit authorized by the statute (Code, 1876, § 2520).

3. *Commissions on collections and disbursements made by administrator in Confederate money; how estimated.*—An administrator is not entitled to full commissions in good currency on collections and disbursements made by him, during the late war, in Confederate money; but an equitable and just value of the usual commissions, reduced from a basis of Confederate currency to that of the present lawful currency of the country, is all that he can demand.

4. *Personal liability of administrator for purchase-money of lands sold by him.*—When an administrator fails to take sufficient sureties on a note for the purchase-money of land sold by him, or becomes himself surety for the purchaser, he is liable individually for the debt, and can not obtain a credit on his final settlement for attorney's fees and costs incurred and paid by him in collecting the debt from the purchaser.

5. *Extra compensation to administrator; services should be itemized.* To entitle an administrator to compensation for special or extraordinary services, proof should be made of each special service, and of its particular value; "the whole should not be aggregated by mere estimate, without being itemized."

6. *Decree against administrator and sureties in favor of his wife, erroneous.*—The husband, as the wife's trustee under the statute, is authorized to receive her distributive share in a decedent's estate; and hence, the husband being administrator of an estate of which the wife is one of the distributees, a decree against him and his sureties in her favor for her distributive share, on a final settlement of the estate in a court of equity, is erroneous.

APPEAL from Cherokee Chancery Court.

Heard before Hon. N. S. GRAHAM.

The bill in this cause was filed on 19th August, 1879, by Jonah Green and others, "heirs and devisees" of Hudson

Kirk, who died testate on 8th December, 1858, against Samuel R. May, as the administrator of the estate of the said Kirk, and the sureties on his administration bond, and others, for the purpose of removing the administration of said estate from the probate court into the chancery court, and of there finally settling the same. On the 21st April, 1880, on a submission of the cause on the bill, the answers of defendants who had answered, and decrees *pro confesso* against those who had not, a decree was entered, taking jurisdiction of the estate of said testator, ordering the removal of the settlement from the probate court into the chancery court, directing a reference to the register for the purpose of stating the administrator's accounts, and prescribing rules by which the accounts should be stated. Under this decree the administrator filed his accounts and vouchers for a final settlement, and the settlement was had before a special register in May, 1881. In the account filed by the administrator, he did not charge himself with any interest, he making and filing with his account an affidavit that he had not used any of the funds of said estate for his own benefit.

It appears from the record that May was appointed administrator on 13th October, 1862. In 1863, he made a partial settlement and distribution; but he then neither claimed nor was allowed credit for commissions on a large amount of money which he had collected and which he then distributed in Confederate currency. On the final settlement, he claimed credit for said commissions; but, the item being contested, the register only allowed him one-fifth of the amount he claimed, which was the usual commissions allowed, it being scaled on account of the character of the currency in which the money was collected and distributed.

It also appears from the record, that on 7th December, 1868, the administrator sold, under an order of the probate court, for distribution, certain lands belonging to the estate, the terms of sale being one-half cash, and the balance at twelve months. Part of these lands the administrator himself purchased for $3850, and the balance was sold to J. J. Scroggins for $3500, the administrator himself becoming his surety for the credit installment. On the final settlement, on motion of the devisees and distributees, the register charged him with interest on the proceeds of these sales as follows: On $3675, one-half thereof, from the day of sale, and on $3675, from the 8th December, 1869, when it became due and payable. It also appears that the register charged the administrator with interest on the proceeds of the sale of other lands belonging to the estate, which he sold, from February 11th, 1878, and from same day in 1879, which appear to be the dates when the said proceeds were collected; and also on a designated balance against him,

as shown by a partial settlement made by him in 1869. The record fails to disclose any reason for the delay in making final settlement; and the reason assigned by the register for charging the administrator with interest is, that "the funds were allowed to lie unproductive for a great length of time, without any sufficient excuse."

It also appears from the register's report, that Scroggins having made default in paying for the lands purchased by him, suit was brought against him in the circuit court for the balance due thereon, "including a note for $285, which was given for a portion of the cash payment which was not actually paid." The administrator having "failed to make the money in this suit," he filed a bill in the chancery court to enforce a vendor's lien therefor. On the settlement the administrator claimed a credit for attorneys' fees and costs paid by him in that litigation; but, on objection by the distributees, the credit was refused by the register. The register also refused the administrator credit for $50 paid his attorneys "for services in assigning dower" to the widow. "This is rejected by the register, with the costs of the proceedings, as being properly chargeable to the widow." The register allowed the administrator credits for divers sums of money which he had *paid* to his attorneys for services rendered him by them in matters pertaining to the estate; but he refused him credits for amounts *due* by him to them for similar services, which he had *not paid*.

As further stated in the report, "the administrator claims $500 for extra services. He testifies they were worth this; that he supposed he had made five hundred trips to Centre. W. H. Kirk also swore that May was the active administrator [he having a co-administrator], and the estate had been a good deal of trouble. But as no itemized statement of special services or expenses was made or proved, the register has no data by which to make an allowance. Any credit of this kind would be guess-work, and, therefore, no credit is allowed."

The other facts necessary to an understanding of the points decided, are given in the opinion. Exceptions were reserved by the administrator to the register's report, saving the rulings above noted for review by the chancellor. On a submission of the cause on the report of the register and the exceptions thereto, the chancellor caused a decree to be entered, overruling the exceptions, confirming the report, and distributing the balance reported by the register to be due from the administrator. The assignments of error here made are based on that decree, and the decree of 21st April, 1880.

WALDEN & SON, REEVES & McCONNELL and WATTS & SON,

[May, Adm'r, v. Green.]

for appellants.  (No brief came to the hands of the reporter.)

AIKEN & MARTIN and ELLIS & BRADFORD, *contra.*—(1) The decree of 21st April, 1880, was a final decree, and would have supported an appeal to this court.— *Walker v. Crawford,* 70 Ala. 567; *Munter v. Linn,* 61 Ala. 492; *Bradford v. Bradley's Adm'r,* 37 Ala. 453; *Waldrop v. Carnes,* 62 Ala. 374. This decree having been rendered more than twelve months before the taking of the appeal, the motion to strike out the assignments of error based thereon should be granted.   (2) The administrator was liable for interest as charged against him in the register's report, notwithstanding the affidavit made by him.—*Mims v. Mims,* 39 Ala. 716; *Harrison v. Harrison,* 39 Ala. 511; 2 Will. on Ex'rs, m. p. 1567; *Pearson v. Darrington,* 32 Ala. 269; *Clark v. Knox,* 70 Ala. 607; *Nunn v. Nunn,* 66 Ala. 35.   He is liable on the Scroggins purchase, 1st, because he failed to take sufficient surety, he being one of them.   He is a principal obligor in the note, and liable for the amount thereof from the day he signed it.—*James v. Faulk,* 54 Ala. 184; 49 Ala. 599; 54 Ala. 389.   2d. Because, by becoming surety on the note, he became liable to the estate for so much cash as soon as due.—*Cochran v. Martin,* 47 Ala. 525; *Kennedy v. Kennedy,* 8 Ala. 391; *Childress v. Childress,* 3 Ala. 752.   (3) The appellant can not complain of the register's ruling as to the item for commissions for moneys distributed on settlement in 1863.   He must take his commissions in the same kind of currency he distributes.—*Dockery v. McDowell,* 40 Ala. 480.   The evidence shows that he afterwards received about the amount of the credit claimed in Confederate money, which he allowed to die on his hands, and with which he has not been charged.   (4) Allowance of attorneys' fees discussed with following authorities cited: *Harris v. Martin,* 9 Ala. 895; *Teague v. Corbett,* 57 Ala. 529; *Bates v. Vary,* 40 Ala. 421.   (5) The register properly refused extra compensation to the administrator.   The items are not furnished, and there was no evidence that extra services were rendered. *Wright v. Wilkerson,* 41 Ala. 273; *Pearson v. Darrington,* 32 Ala. 273.

SOMERVILLE, J.—The decree rendered by the chancellor in this cause, on the 21st April, 1880, is obviously a *final decree* in every essential particular.   It shows that the cause was submitted for disposition by final decree, that the court assumed jurisdiction of the estate of the testator, as prayed by the bill, ordered the removal of its settlement from the probate to the chancery court, referred the taking of the account to the register, and laid down the rules by which the administrator was to

be governed in making a statement of his account with the estate and with the distributees. This was a settlement by the chancery court of all the equities of the case, leaving nothing to be done but the actual taking of the account by the register. The decree is, therefore, final.— *Walker v. Crawford*, 70 Ala. 567 ; *Jones v. Wilson*, 54 Ala. 50 ; *Garner v. Prewitt*, 32 Ala. 18.

This appeal not having been taken within one year from the date of its rendition—the limit fixed by statute—no assignments of error can be predicated upon any supposed errors in it. The motion made to strike out the assignments of error having reference to the rulings of the court as appearing in this decree, must be sustained.

The rule may now be considered as firmly settled by the decisions of this court, that when an administrator, without sufficient excuse, procrastinates making a final settlement and distribution of an estate for an unreasonable length of time, he is liable for *interest* on funds of the estate in his hands, and which should have been distributed by him to the parties entitled, although he may make the exculpatory affidavit required by section 2520 of the Code, expressly denying the fact that he has used such funds for his own benefit.—*Clark v. Knox*, 70 Ala. 607 ; *Clark v. Hughes*, 71 Ala. 163. It does not appear that the register has been guilty of any misapplication of this rule in the charges of interest made against the administrator in the statement of his account.

The administrator was not entitled to full commissions in good currency on the large amount of Confederate money collected and distributed by him. The equitable just *value* of the usual two and a half per cent., reduced from a basis of Confederate currency to that of the present lawful money of the country, is all that could be demanded. The register allowed one-fifth, and this is not shown to be unreasonable.—*Dockery v. McDowell*, 40 Ala. 476 ; *Cummings v. Bradley*, 57 Ala. 224. The evidence shows, moreover, a balance of Confederate money which fell as worthless in the administrator's hands at the termination of the war, which was quite sufficient to have discharged these commissions. He is not charged with this money in his account, and he should have used it in paying what was due himself by the estate. He should not have received a currency from others which he declined to take himself.

The chancellor properly refused to allow any attorneys' fees or costs incurred by the administrator in his litigation with Scroggins, in which he sought to enforce collection of the note given for the purchase-money of land sold under an order of the probate court. The administrator was himself a surety on this note, having voluntarily assumed in such capacity to guar-

antee its punctual payment to the estate when due. The judgment obtained at law proved fruitless in consequence of the administrator's failure to take two good and sufficient sureties on the note, as he was required to do by statute.—Code 1876, § 2461. This, of itself, rendered him chargeable with the purchase-money.—*Jones v. Faulk*, 54 Ala. 184 ; *Walls v. Grigsby*, 42 Ala. 473. As one of the sureties on the note, the administrator's duty was plain. He owed the debt as much as the principal, and he was not entitled to expenses occasioned by his own and his principal's default, or breach of legal duty. He should have charged himself with the full amount of the purchase-money, with lawful interest, without burdening the estate with the costs of his own negligence.

We discover no error in the amount allowed the administrator for attorneys' fees.

The record fails to disclose any special or extraordinary services for which the administrator was entitled to compensation. Proof, moreover, should have been made of each special service with its particular value, and the whole should not have been aggregated by mere estimate without being itemized.

We are of opinion, however, that the decree of the chancellor is erroneous in one particular. The appellant, Samuel R. May, was the husband of Martha F. May, who was one of the distributees of the estate of Hudson Kirk, of which he was administrator. He, therefore, had a right to collect for her, as her statutory trustee, her distributive share of the estate. The language of the statute is : " The husband has power to receive property coming to his wife, or to which she is entitled, and his receipt therefor is a full discharge in law and equity." Code 1876, § 2710. The decree for two thousand and fifty-one 25-100 dollars, rendered in favor of Mrs. May against her husband and his sureties on the administrator's bond, can not, for this reason, be sustained. The husband was authorized to receive the amount, and his receipt of it was a satisfaction of the claim. If he converted it to his own use in violation of his trust, the wife's only remedy was by bill in equity, filed for the purpose of removing him from the trust, because of his unfitness or incapacity leading to his indiscreet management of her property.—Code 1876, § 2717.

The decree of the chancellor must be reversed, and a decree here rendered, adjudging that Mrs. Martha F. May is entitled to recover no portion of her share of said estate which went into the hands of her husband, the said Samuel R. May. And a decree will, furthermore, be here rendered, adjudging each of the other distributees entitled to recover the several sums adjudged them by the chancellor, as set forth in his decree, no change being made therein except as to the share of Mrs. May.