# Foley et al. v. Leva et al.

*Bill in Equity by Heirs to declare a Lien upon Land purchased with Funds of the Estate.*

1. *What is a final decree.*—A decree in chancery, which settles all the equities between the parties, leaving only matters of account to be adjusted on a reference before the master, is such a final decree as will support an appeal.

2. *Limitation of appeal; when assignments of error are stricken out.*— Where an appeal is sued out in a chancery cause more than a year after the rendition of a decree which settled all the equities between the parties, such decree can not be reviewed, and all the assignments of error relating to matters embraced in that decree should be stricken out, upon motion, because the appeal was barred at the time it was taken.

3. *Bill in equity to have a lien declared; what is a final decree.*—Where, in a bill filed by heirs to have a lien declared in their favor upon a certain lot, alleged to have been purchased and improved by the administratrix of their decedent's estate, partly with the funds of the estate, which lot had been mortgaged by her to her co-defendants, it is shown that a part of the debt secured by said mortgage was an individual debt of the administratrix secured by a prior mortgage given by her on said lot, and which was assumed by her co-defendants, a decree holding the mortgage by the administratrix to her co-defendants to be a superior lien on the lot, to the extent of the debt assumed by the mortgagees, and that as against the remainder of the debt secured by said mortgage complainants were entitled to relief, at the same time giving particular instructions and directions to the register as to the manner of taking and stating an account between the parties, settles all the equities of the bill as between the complainants and the defendants, and is a final decree, from which an appeal may be prosecuted.

4. *Misapplication of funds by administrator; rights of heirs and personal creditors.*—Where an administrator has used the funds of his intestate's estate in the purchase of lands, taking the title in himself,

[Foley et al. v. Leva et al.]

the distributees and heirs may, at their election, either claim the lands with rents, or hold the administrator responsible for the money with interest and have a lien declared on the land for the payment thereof; but having elected to claim the money and interest, they can not also claim the land on which the money of the estate was invested, or the rents thereof, and in a bill filed by the heirs to have a lien declared in their favor on the lands, there is no error in a decree treating the rents from the land as the property of the administrator, and in applying them to the payment of his individual debts.

5. *Same.*—Where one, who is the administratrix of an estate, borrows money on her own account, with which the estate of her intestate has nothing to do, and pays the money on her individual mortgage debt, and she afterwards uses money of the estate to re-fund her lender, no equity arises out of such a conversion by the administratrix in favor of the heirs of the estate against the mortgagees, to whom she paid the borrowed money.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. WILLIAM H. TAYLOE.

The bill in this case was filed by the children of Patrick Foley, deceased, against Ann Foley, Marx Leva and Aaron Maas, and alleged that said Ann Foley was the widow of said Patrick Foley and the administratrix of his estate; that while acting as such administratrix, she purchased in her own name, and improved a certain lot of land in Selma, Alabama; that in paying for said lot and improvements, she used $986 of money belonging to the estate of her intestate; that after she purchased and improved said lot, she gave a mortgage on it to Adler, Leva & Co., to secure a debt she owed them, amounting to about $1,800; that at the time Adler, Leva & Co. took said mortgage, they had notice that said $986 of money belonging to the estate of said Patrick Foley had been used in purchasing and improving said lot; that Marx Leva, one of the firm of Adler, Leva & Co., afterwards became the owner of said mortgage, and on the 6th of December, 1887, sold said lot, under the power contained in said mortgage in foreclosure thereof; that at said sale, Aaron Maas became the purchaser of said lot, and purchased it for said Marx Leva; that at said foreclosure sale, and before said Maas bid the same off, he was notified that $986 of the money used in purchasing and improving said lot by said Ann Foley, belonged to the estate of said Patrick Foley, and that complainants, as his children and heirs, would subject said lot to the payment thereof.

The prayer of the bill was, that said lot be sold, and that complainants "obtain and realize the said sum of $986, and the interest thereon."

Ann Foley declined to answer the bill, and a decree *pro confesso* was taken against her. Aaron Maas answered, and admitted the purchase of said lot as charged in the bill, and that complainants gave notice that $986, of the money of the estate belonging to them, had been used by Ann Foley in the purchase and improvement of said lot, and that he bought it for said Leva with such notice. Leva answered denying that any money of the estate of said Patrick Foley, as averred, had been used by said Ann Foley in purchasing and improving said lot; and he set up in his answer—a fact to which no reference was made in the bill—that $928.15 of the debt secured by said mortgage from said Ann Foley to Adler, Leva & Co., was secured by a prior mortgage given on said lot by her to the firm of Spence & Steele, to whom she was indebted in that sum; which debt and mortgage, at the instance and request of said Ann Foley, said firm of Adler, Leva & Co. paid to said Spence & Steele, to secure which and the other sum of $986, owing by her to them, she executed and delivered her said mortgage to them.

The cause was submitted for final decree on the pleadings and proofs, and on the 3d day of April, 1890; the chancellor rendered a written opinion and decree in the cause which was received, filed and enrolled on the 7th of April, 1890. In his opinion, the chancellor said: "The conclusion reached from the authorities and testimony is, that for the amount paid to Spence & Steele and interest thereon, the mortgage must stand as a valid security, and must prevail over the equities of complainants, and that as against the remainder of the debt secured by the mortgage, complainants are entitled to relief."

The decree directed : " (4.) That the mortgage executed by Ann Foley to Adler, Leva & Co., mentioned in the pleadings, is a valid security for the amount and interest thereon, paid by Adler, Leva & Co. to Spence & Steele, and to this extent, is prior and must prevail over complainants' right to relief. (5.) That complainants are entitled to relief; and a lien and trust, as a security to satisfy complainants' demand, is hereby declared in the

lot and improvements thereon described and conveyed by the mortgage executed by Ann Foley to Adler, Leva & Co., mentioned in the pleadings, subject to the prior lien established and declared in the 4th section of this decree.''

Particular instructions and directions were given in the decree to the register in and about taking and stating an account, which was ordered, to ascertain the respective interests of the said Ann Foley individually, and of the complainants, as the representatives of the estate of Patrick Foley, in the purchase and improvement of said lot; to ascertain what part of the payment which had been made as credits on said mortgage belonged to said Ann Foley, or had been derived by her from said estate as rents or otherwise, to which complainants were entitled; and he was directed, in stating the account, to apply the money and assets, if any, which of right belonged to complainants—and which had been received as partial payments upon the mortgage—to the Spence & Steele debt, entitled thereto as a prior debt, and to report what balance of said mortgage debt remained thereafter. The complainants appeal, and assign as error the decree of the chancellor.

JOHN C. REID, for appellants.

PETTUS & PETTUS and SATTERFIELD & YOUNG, *contra.* (1.) The decree in this case was filed on the 7th day of April, 1890. It settled all of the equities of the case, and determined all the rights of the parties to the suit, and nothing is left to be done in the case except to state the account, and ascertain the exact amount due on the different claims. This decree is a final decree, and would have supported an appeal.—*Bradford v. Bradley*, 37 Ala. 453; *Weatherford v. James*, 2 Ala. 170 ; *Garner v. Prewitt*, 32 Ala. 13; *Jones v. Wilson*, 54 Ala. 50; *Ansley v. Robinson*, 16 Ala. 793; *Hastie & Silver v. Aiken*, 67 Ala. 313. (2.) No appeal was taken from this decree until April 19, 1892, more than two years after said final decree was rendered. At the time the appeal was taken, an appeal from the decree rendered April 7, 1890, was barred by the statute of limitations, and no assignments of error can now be based on that decree. The motion to strike out all such assignments of error should, therefore, be granted.—Code, § 3619; *Walker v. Craw-*

*ford,* 70 Ala. 567; *Cochran v. Miller,* 74 Ala. 50; *May v. Green,* 75 Ala. 162; *Stoudenmire v. DeBardelaben,* 85 Ala. 85, 4 So. Rep. 723. (3.) Having elected to claim their money with interest, they can not also claim the property in which it was invested or rents thereof. The two claims are repugnant, and can not be insisted on at the same time.—2 Story's Eq. Jur., §§ 1262, 1263; 2 Perry on Trusts, § 842; *Parks v. Parks,* 66 Ala. 326; *Whaley v. Whaley,* 71 Ala. 159.

HARALSON, J.—The decree rendered in this cause, on the 7th April, 1890, was a final decree, which settled all the equities of the bill as between the complainants and defendants. The account ordered was in accordance with the opinion and decree of the court, and looked merely to the perfecting of the decree. To the extent of settling the equities between the parties, it was final, and as to the matter of the taking of the account, it was interlocutory.—*Smith v. Coleman,* 59 Ala. 262; *Jones v. Wilson,* 54 Ala. 50; *Waldrop v. Carnes,* 62 Ala. 374; *Malone & Foot v. Marriott,* 64 Ala. 486; *Broughton v. Wimberly,* 65 Ala. 550; *Walker v. Crawford,* 70 Ala. 567; *May v. Green,* 75 Ala. 162; *Adams v Sayre,* 76 Ala. 509; *Marshal v. McPhillips,* 79 Ala. 145; *Louisville Manfg. Co. v. Brown, ante* p. 173.

The decree being final, was subject to review on appeal to this court, if taken within a year from the rendition thereof; and no appeal having been taken from it, until the 19th day of April, 1892, it was barred at the time taken, and can not now be reviewed. No assignments of error can be made upon a decree which does not support an appeal, or upon one which is barred. A motion to strike out the errors here assigned, based on this decree, must be granted.—*Stoudenmire v. DeBardelaben,* 85 Ala. 85, 4 So. Rep. 723; *Kimbrell v. Rogers,* 90 Ala. 346, 7 So. Rep. 241; and authorities *supra.*

The account as finally stated and confirmed by the court, contained several items which were excepted to by the complainants, which require notice.

Mrs. Foley bought the lot out of which this litigation springs, having used the money of her intestate in its purchase and subsequent improvement. She rented it out afterwards, and turned the rent contract over to defendants, on which they realized $700. She borrowed

$300 from Daniel O'Rourke, on her own account, with which the estate of her intestate had nothing to do, and paid it to defendant Leva, on her individual debt to him, secured by said mortgage, and this money she afterwards refunded to O'Rourke, out of the money of the estate, but it is not shown that defendants had any knowledge or connivance in that transaction. She also paid them, as she claims, the proceeds of five bales of cotton, amounting to $162.29. These several sums, the complainants claim, ought to have gone as credits on the Spence and Steele debt, of prior claim to defendants' individual debt against Mrs. Foley, and not to the latter, and these constitute the basis of many exceptions in various forms, but to the same effect.

It is a familiar principle, that when an administrator uses the funds of the estate in the purchase of land, taking title to himself, the distributees, may, at their election, either claim the land with rents, or hold him responsible for the money with interest, and have a lien declared on the land for the payment of the same.— *Lehman v. Lewis,* 62 Ala. 131; *Parks v. Parks,* 66 Ala. 327; *Bass v. Bass,* 88 Ala. 413, 7 So. Rep. 243; 3 Brick. Dig. 785, §§ 50, 51.

The complainants made their election, and by their bill seek to charge the defendants with the money of the estate of Patrick Foley which went into the lot, with the interest thereon, and not to recover the lot itself. Having elected to claim the money and interest they must stand by their election, and can not also claim the lot in which the money of the estate was invested, or the rents thereof. By this election, they confirm the title of Mrs. Foley to the lot and to its rents. There was no error, therefore, in treating the rents of the lots as hers, and in applying them to her individual debt to defendants, Leva & Co.—2 Story Eq. Jur., §§ 1262, 1263; 2 Perry on Trusts, § 842; *Whaley v. Whaley,* 71 Ala. 161; *Parks v. Parks, supra; Preston v. McMillan,* 58 Ala. 84.

The exceptions based on the supposed erroneous application of the $300 borrowed by Mrs. Foley from O'Rourke, with which she made a payment to the defendants, on her debt to them, is equally untenable. When she borrowed and paid the money, it was her individual property. The estate had no right or equity in it, and the fact that she subsequently took a like amount from

[Troy et al. v. May.]

the estate of her intestate, and paid this debt to O'Rourke, did not change or have any effect on the transaction of the payment of the sum originally borrowed from him to defendants.   No equity in her favor or that of her children, the complainants, as against the defendants, arises out of such a conversion of the funds of her intestate.

As to the application of the proceeds of the five bales of cotton, it is sufficient to say, there is no evidence to show that they belonged to the estate.   Mrs. Foley testified, she was doing a mercantile and advancing business to farm hands, on her own account, and as to one of the bales, she testifies, positively it was hers, and as to the others, she did not say they belonged to the estate, but she did say, she was receiving, at the time, cotton of her own, on account of advances.   There was no error in the ruling as to this cotton.

We find no error in the record, and the decree of the chancery court is affirmed.