194 So. 164
### HARRIS v. SHEFFIELD NAT. BANK.
#### 8 Div. 25.

Supreme Court of Alabama.
Feb. 22, 1940.

John E. Delony, Jr., of Tuscumbia, for appellant.

Andrews & Almon, of Sheffield, for appellee.

KNIGHT, Justice.

The bill in this cause was filed by the Sheffield National Bank, a national banking corporation organized under the National Banking Laws of the United States, 12 U.S. C.A. § 21 et seq., against Mary T. Harris and others, seeking to enjoin the foreclosure of a certain mortgage, executed by Elbert H. Fowler to Thurmond Harris on January 2, 1926, to secure the payment of five promissory notes, each in the principal sum of Seventy-nine Hundred Dollars; and praying for an accounting to ascertain the amount due to the complainant and the said Mary T. Harris on the mortgage indebtedness; for the foreclosure of said mortgage under the orders and decrees of the court, and for allowance of solicitor's fees to complainant's attorneys.

It appears from the bill that the said Elbert H. Fowler, to secure his indebtedness to the said Thurmond Harris in the principal sum of $39,500, which was evidenced by his five promissory notes, each in the sum of $7,900, and each bearing interest from their dates, at six per cent per annum, and due and payable in one, two, three, four and five years, respectively, executed to the said Thurmond Harris on January 2, 1926, a mortgage conveying to said Harris the lands described in the bill.

It also appears from the bill that three of said notes, those maturing January 2, 1927, January 1928, and January 2, 1929, had been paid, and that payments had been made on the 4th note in the aggregate amount of $3,500, and that interest on said note had been paid to January 2, 1930.

It further appears that the complainant was at the time of the filing of the bill, and for a long time prior thereto, the owner of the fifth note above described.

It is further alleged in the bill that the respondent Mary T. Harris, claiming to be the transferee and owner of the said mortgage, was proceeding to foreclose the same under the power of sale therein contained, and that she had advertised the property for sale under the mortgage. A copy of the foreclosure advertisement was made an exhibit to the bill.

It is also averred that the said respondent Mary T. Harris has very little unencumbered property, and that an execution against her on a judgment for complainant's proportionate share of the proceeds arising from a fair sale of said mortgaged property could not be collected. There are

**94**

other allegations in the bill, but we do not deem a detailed statement of the same necessary to a proper understanding of the case.

There was a general demurrer to the bill filed jointly by the respondents, Mary T. Harris and Thurmond Harris, taking the point that it was without equity. This demurrer was overruled by the court, and each of said respondents filed their answers to the bill. In her answer, Mrs. Harris denied that the complainant was the owner of the said fifth note, or of any of them, asserted that said note, as well as the fourth note, were her property; that the said fifth note, while it was her property in fact and truth, was pledged, or attempted to be pledged, to the said complainant to secure an indebtedness due to the complainant by her husband, and that such pledging, or attempted pledging of her property to secure the payment of her husband's debt was illegal and void under the law.

At a later period in the litigation, the said respondent Mary T. Harris filed a further and additional answer, and made it a cross bill against the complainant, praying that it be decreed that said complainant "acquired no title, right or interest in and to note numbered five of Elbert H. Fowler, transferred, assigned and delivered to the Sheffield National Bank by the respondents J. C. Harris (husband of complainant) and Thurmond Harris," and that the court decree that cross complainant, by the prior transfer of said note, was entitled to be first paid out of the proceeds of the sale of the mortgaged property. In the alternative, that if she was mistaken in the relief prayed for, "then she prays that if she is entitled to a priority by reason of her assignment, then that the court order said mortgage foreclosed and determine the order of payment of the various assignees and owners of said notes out of the proceeds of said sale."

The answer of respondent Thurmond Harris followed closely the line of defense asserted by the said Mary T. Harris, but he filed no cross bill.

On submission of the cause, on pleading and proof, as noted by the register, the court decreed that the complainant was entitled to the relief prayed. The decree recites: "The court finds from the evidence, that of the series of five notes executed by Elbert H. Fowler to Thurmond Harris on the 2nd day of January, 1926, and secured by the mortgage which is made exhibit 'A' to the bill of complaint, notes numbered 1, 2 and 3 were paid by the maker, Elbert H. Fowler, in his life time; that a balance remains unpaid on note no. 4 of said series, *but that the ownership of said note No. 4 has not been satisfactorily established,* and that note No. 5 of said series of notes is and was at the commencement of the suit the property of complainant."

This decree perpetually enjoined the said Mary T. Harris from foreclosing or attempting to foreclose the said mortgage from Elbert H. Fowler to Thurmond Harris, dated January 2, 1926. The decree then ordered the register to sell the property in foreclosure of the mortgage, after giving the notice required by and specified in the decree. The decree ordered and directed the register to make report of the sale to the court, said report to "show the total sale price, the amount of the proceeds arising from the sale found by her to be due to the owner of such note No. 4, and the amount of the proceeds found to be due to the owner of such note No. 5." Then the decree contains this further direction: "It is further ordered, adjudged and decreed by the court that it be, and it hereby is referred to the register of this court to ascertain and report to the court the respective amounts now due on notes numbered four and five of the series of notes executed by Elbert H. Fowler to Thurmond Harris, all dated January 2nd, 1926, and secured by the mortgage made Exhibit 'A' to the bill; and to ascertain by legal evidence, such evidence to include said Note No. 4, and to report to the court the present ownership of said Note No. 4, together with the evidence upon which such report is based." The decree also directed the register to ascertain and report what would be a reasonable attorney's fee to be allowed solicitors for complainant for instituting and maintaining this suit. This decree was rendered in the cause on February 28, 1939, and filed March 2, 1939.

█ This decree, in so far as it granted complainant the relief prayed, enjoined perpetually the respondent from foreclosing said mortgage, and found that the complainant was the owner of said Note No. 5, was a final decree, and as such was appealable. Any and all equities settled by that decree cannot now be considered, as no appeal was taken from that decree within the period allowed by law for appeals from final decrees. Garry v. Jenkins, 109 Ala. 471, 20 So. 8; Wynn, Admr., v. Tallapoosa County Bank, 168 Ala. 469, 53 So. 228; Harris

v. Johnson, 176 Ala. 445, 58 So. 426; Coker v. Coker, 208 Ala. 239, 94 So. 308; United States S. & L. Co. v. Leftwich, 132 Ala. 131, 31 So. 474; Foley v. Leva, 101 Ala. 395, 13 So. 747; O'Rear v. O'Rear, 227 Ala. 403, 150 So. 502; Williams et al. v. Knight, 233 Ala. 42, 169 So. 871; Bohannon v. Acton, 233 Ala. 305, 171 So. 733; Carter v. Mitchell, 225 Ala. 287, 142 So. 514.

The only matters, which we can consider on this appeal, are such equities or rights as were not finally determined by the first decree, and matters arising on the confirmation of the register's report. Such matters, it appears, relate solely to the ownership of Note No. 4, the allowance of attorney's fees, the application of the proceeds of the sale of the mortgage property as between the owners of Notes No. 4 and 5, and the taxation of cost.

It is first insisted by appellant that the court did not, by its decree of February 28, 1939, adjudicate the major equities of the case, namely: (1) Did the wife's property secure the husband's debt?; (2) nor as to the priority of payment of Notes 4 and 5; (3) the court did not assess court costs against either party; (4) the court did not decree out of which note or fund the solicitor's fee should be paid; (5) nor did the court decree the priority of payment of the notes, numbered four and five.

We are quite sure the court's decree did adjudge and decree that no property of the wife was pledged to secure the husband's debt. The court found that this note was the property of the complainant. But apart from this finding, we are fully persuaded that this Note No. 5 was the property of the complainant, and had been such since about January 2, 1930, and certainly as far back as 1931.

We are further persuaded by the evidence that Note No. 5 had never been the property of the appellant Mary T. Harris; that the contention that it had been transferred and assigned to her and was her property was but a subterfuge concocted by the respondent Thurmond Harris to defraud the complainant.

It is quite true that the court did not by the first decree ascertain and decree the priority of payment as between the owners of Notes 4 and 5. The court was uncertain, at the time the decree was rendered, as to the ownership of Note 4, and as to when the present owner acquired said note. The court, therefore, directed the register to take evidence upon this question and make her report and findings, together with the evidence to the court. This was permissible.

The register reported that Mrs. Mary T. Harris was the present owner of the balance due on said Note No. 4. But when she acquired said note, does not appear from the report of the register.

The register also reported that $750 would be a reasonable allowance to the solicitors of the complainant.

It appears from the report of the register that the property sold for $3,000; that the cost in the case was $182.50; that a reasonable attorney's fee was $750, total costs and attorney's fee $932.50, and after deducting this amount from the proceeds of the sale, there remained for distribution between the owners of Notes four and five the sum of $2,017.40.

The register found and reported that there remained due and unpaid on Note 4 the sum of $1,332.45, and that there remained due and unpaid on Note 5 the sum of $12,907.28.

The register further found and reported that, after deducting cost of court and attorney's fee, the pro-rate share of the respondent Mary T. Harris of the net proceeds of sale was $193.54, and the peorata share of the complainant in said net proceeds was $1,873.86.

The court by its decree of October 11, 1939, duly confirmed the report of the register, and ordered distribution of the funds in accordance with the findings and report of the register.

We are convinced that neither the finding and report of the register, nor the decree of the court confirming said report, was, under the evidence in the record, prejudicial to the respondent Mary T. Harris, who alone complains of the same.

The law seems to be well settled that the transfer of one of several notes secured by mortgage clothes the transferee with the right to be first paid. Collins et al. v. Forman et al., 230 Ala. 370, 161 So. 238; Farmers' Savings Bank v. Murphree, 200 Ala. 574, 76 So. 932, 933; Hand v. Kemp, 207 Ala. 309, 92 So. 897; Irvin v. Citizens' Bank of Hattiesburg, Miss., 209 Ala. 211, 95 So. 897. Of course, if there have been successive transfers, at different times, the priorities of the transferees are fixed by the order of the transfers.

It is certain beyond any sort of doubt that the complainant became the absolute owner of Note 5 in 1931, or sooner.

On the other hand, we are fully persuaded that if the respondent Mary T. Harris ever, in truth and fact, became the beneficial owner of Note No. 4, she acquired such ownership at a date later than November 23, 1934.

We may here remark that we do not find that this Note No. 4, with the endorsements thereon, was introduced in evidence.

We are of the opinion, and so hold, that in ordering distribution of the net proceeds amongst the owners of Notes 4 and 5 in the manner shown by the report of the register and the decree of confirmation, the distribution ordered was even more favorable to respondent Mary T. Harris than the evidence shows she was entitled to receive. Hence the decree was without prejudicial error as to her.

Of course counsel for appellant Mary T. Harris is mistaken in his contention that the attorney's fee allowed to complainant's solicitors was taxed against the said appellant's share of the proceeds of said sale. This fee was taxed against the common fund—and this, we hold, was proper.

It is also insisted, that inasmuch as the register failed to hold the reference within three months from the rendition of the decree ordering it, her action in holding the same at a later period was illegal. There is no merit in this contention. The record fails to show any objection was interposed before the register when the reference was entered upon. Under Section 6594 of the Code, Mrs. Harris could have required the proceedings to be had before the register, in accordance with the decree of reference, at the cost of the complainant, at a sooner time, but this she did not do.

There was a general demurrer to the bill by the respondents Mary T. Harris and Thurmond Harris, which was overruled by the court. The demurrer was without merit, and besides no argument is here submitted in support of this assignment of error. It is therefore waived.

We find no error in the decree of the circuit court, and its decree is due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.